IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SKYLAR JAMES NANCE, | ) | Civil No. 3:11-cv-00112-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Richard A. Sly
209 SW Oak Street, Suite 102
Portland, OR 97204

Linda S. Ziskin
P.O. Box 2237
Lake Oswego, OR 97035

    Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

       S. Amanda Marshall, U.S. Attorney
       Adrian L. Brown, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204-2902

       Gerald J. Hill
       Social Security Administration
       Office of the General Counsel
       701 Fifth Avenue, Suite 2900, M/S 221A
       Seattle, WA 98104

            Attorneys for Defendant

JELDERKS, Magistrate Judge:

      Plaintiff Skylar Nance brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income disability benefits (SSI) under the Social Security Act (the Act).

      For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

      Plaintiff filed an application for SSI disability benefits on December 2, 2005, alleging that he had been disabled since March 2, 2005, because of seizures and attention deficit/hyperactivity disorder (ADHD). While his application was pending, he cited additional psychological problems and headaches as impairments that also contributed to his disability.

      After his application had been denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before ALJ Catherine Lazuran on July 1, 2008. In a decision filed on November 26, 2008, ALJ Lazuran found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on December 6, 2010, when the Appeals Council denied

FINDINGS AND RECOMMENDATION - 2

Plaintiff's request for review. In the present action, Plaintiff challenges the Commissioner's decision.

## Background

Plaintiff was born on December 27, 1984, and was 23 years old at the time of the ALJ's decision. He had an Individual Educational Plan (IEP) in high school, and obtained a GED after leaving school. He has worked part-time, for short periods of time, in fast food restaurants and as a stock clerk in a gas station.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

### **Medical Record**

The record shows that Plaintiff was diagnosed with ADHD when he was a child, and has had mental problems since his childhood. He received special educational services because of learning and behavioral problems, and has had problems with anger management, aggressiveness, attendance, impulse control, concentration, and authority.

Plaintiff began to have seizures when he was 13 years old. On September 5, 1998, he was taken to an emergency room after reportedly taking LSD that may have been laced with PCP. Plaintiff suffered recurrent seizures with airway compromise. He was put on mechanical ventilation after suffering a generalized tonic-clonic seizure in the hospital, and remained in a coma for several days. Plaintiff has speculated that his use of LSD caused this seizure.

Plaintiff subsequently experienced a number of petit mal seizures, and had grand mal seizures again in 2005 and 2006. He was hospitalized in March, 2005 after suffering two grand mal seizures, and had a third seizure at the hospital. An MRI was scheduled, but not performed because Plaintiff wanted to smoke a cigarette before the examination began, and left the hospital against medical advice when no delay in the testing was permitted.

Georgia Wilcox, Psy.D., conducted a psychodiagnostic evaluation on February 13, 2006. Plaintiff told Dr. Wilcox that he had been arrested at least 15 times for possession of marijuana, and that repeated "dirty" urine samples had resulted in several detentions in a juvenile facility, and ultimately in his placement in a mandatory drug rehabilitation program. Plaintiff reported

that he suffered more petit mal seizures during the six month period while he was in treatment and not smoking marijuana. He said that he "medicated" with marijuana, smoking the drug "every day, all day, maybe 20 bowls a day." He said that smoking marijuana kept him calm, prevented seizures, and made it possible for other people to tolerate him. Plaintiff told Dr.Wilcox that he had earned $50 to $400 per day selling marijuana earlier, but that he had stopped because his girlfriend was 7 months pregnant and he did not want to "get in trouble" before his child was born.

      Dr. Wilcox observed that Plaintiff's intellectual abilities appeared to be in the Average range, and that, though Plaintiff complained of poor attention and concentration, these were not evident in his interview. She diagnosed Cannabis Dependence, ADHD, Oppositional Defiance Disorder (by history), and Anti-social Personality Disorder. She rated Plaintiff's GAF at 31-35, and opined that Plaintiff would not likely be hired or be successfully employed as long as he continued to use marijuana.

      Dr. Julia Wong-Ngan, a consulting clinical neuropsychologist, examined Plaintiff on July 20, 2006. Plaintiff reported a long history of marijuana use, and told Dr. Wong-Ngan that he had been addicted to the drug during his adolescence. Plaintiff reported that he had been placed in a psychiatric hospital two times, and that he had been placed in a variety of treatment facilities because of behavioral problems.

      Dr. Wong-Ngan reported that the results of cognitive tests she administered indicated average intelligence, and found Plaintiff generally performed in the normal range. She opined that there were "probably a few factors," including a seizure disorder, that interfered with Plaintiff's ability to sustain employment. Dr. Wong-Ngan noted that Plaintiff appeared to have mild problems with distractibility and demonstrated mild impulse control problems, and opined

that Plaintiff had problems with authority and anger control, likely had an anti-social disorder, appeared to have significant anxiety and depression, and appeared to have "some degree" of panic disorder and agoraphobia. She opined that Plaintiff had memory problems that were consistent with his seizures and use of Dilantin, and thought that medication for Plaintiff's untreated ADHD might improve his "prognosis for employment."

Dr. Wong-Ngan diagnosed ADHD, panic disorder with agoraphobia, cannabis dependence in partial remission, antisocial personality disorder, and a seizure disorder. She rated his Global Assessment of Functioning (GAF) as 53.

In a form he completed on October 6, 2006, Plaintiff indicated that he planned to treat his seizure disorder with marijuana.

During a medical examination on August 17, 2007, Plaintiff complained of night sweats and weight loss, and reported that he had not been having any seizures. Dr. Erik Geissai opined that Plaintiff's night sweats may have been caused by nightmares.

## Hearing Testimony

### Plaintiff

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff had not worked since December 2005. He had experienced a dramatic weight loss because of side effects of his medications, which also caused migraine headaches and interfered with his sleep.

Plaintiff had briefly worked part-time in fast food restaurants and at a gas station, and had lost his last employment because of a physical altercation with his boss. During a period of homelessness, Plaintiff had slept under a bridge and sold marijuana.

Plaintiff drank little alcohol. He had a medical marijuana card, and used marijuana medicinally every day to relieve headaches and sleep difficulties.

**Corinne Nance**

Corrine Nance, Plaintiff's mother, testified as follows at the hearing.

Ms. Nance talked with Plaintiff every day, and saw him several times a week. Plaintiff did not drive, and Ms. Nance took him shopping and to appointments. She had witnessed many of Plaintiff's petit mal seizures, which lasted 5 to 10 minutes, and had witnessed at least four of Plaintiff's grand mal seizures. The grand mal seizures could last for 10 to 15 minutes, and it could take Plaintiff 45 minutes to an hour for the effects of a seizure to resolve. Plaintiff had experienced 8 or 9 grand mal seizures during one evening, and the seizures had continued after Plaintiff was taken to the hospital.

Plaintiff had problems with concentration and authority, was disruptive, and had been unable to even stay in a "behavior modified" classroom when he attended school. Plaintiff had been sent to the Children's Farm Home, a place for children with "criminal troubles," because of his oppositional disorder. From the time he was 8 years old, Plaintiff had taken various medications for ADHD.

**Vocational Expert**

Dr. Hanoch Livnah, a VE, testified at the hearing. The ALJ posed a vocational hypothetical describing an individual with no exertional limitations, who should avoid climbing ladders, ropes, and scaffolds, and should avoid all hazards. The VE opined that the described individual could work as a fast food worker, a laundry worker, and a small products assembler, even if required to occasionally perform complex tasks and occasionally have contact with the public. Adding a limitation to jobs that "are not frequently rushed" would eliminate some

assembler and fast food jobs, and would affect laundry worker positions to a lesser extent. The VE added produce sorter and night janitor positions to those that the described individual could perform. She testified that the night janitor, laundry, and produce sorter positions would not be affected by the addition of a limitation to minimal social interaction generally.

In response to questioning by Plaintiff's attorney, the VE testified that a loss in persistence and pace that reduced an individual's productivity to 80% of that typically required would "have an impact on the ability to maintain those jobs." She also testified that most employers would not tolerate two or more absences per month.

### ALJ's Decision

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since he filed his application for SSI benefits.

At the second step, the ALJ found that Plaintiff had the following severe impairments: a seizure disorder, drug addiction, a history of ADHD disorder, an anxiety disorder, and a personality disorder.

At the third step, the ALJ found that, if Plaintiff discontinued his substance abuse, he would not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next evaluated Plaintiff's residual functional capacity (RFC). She found that Plaintiff could perform a full range of work at all exertional levels, except that he could not climb ladders, ropes, and scaffolds, could not be exposed to hazards, and was limited to performing simple tasks that involved minimal social interaction. The ALJ concluded that, because of his substance abuse disorder, Plaintiff could not sustain full time work.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ found that, because of all his impairments, including his substance abuse disorder, Plaintiff could perform no jobs that existed in substantial numbers in the national economy.

The ALJ next found that, if Plaintiff were to discontinue his substance abuse, he would continue to have severe impairments that, alone or in combination, would not meet or medically equal a presumptively disabling impairment included in the Listings.  She further found that, in the absence of drug abuse, Plaintiff would have the residual functional capacity required to perform a full range of work, except that he would not be able to climb ladders, ropes, or scaffolds, or tolerate exposure to hazards.  The ALJ found that Plaintiff would be limited to simple tasks that involved minimal social interaction, would not be able to perform any of his past relevant work, but would be able to perform other work that existed in substantial numbers in the national economy.  As examples of such work, the ALJ cited the VE's testimony that an individual with Plaintiff's RFC who did not abuse drugs could work as a produce sorter, a laundry worker, or a night janitor.

Because she concluded that Plaintiff would not be disabled if he stopped his substance abuse, the ALJ concluded that substance abuse was a contributing factor that was material to the finding of disability.  Based on this conclusion, she found that Plaintiff was not disabled within the meaning of the Act.

In reaching these conclusions the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with her assessment of his RFC.  She also found that Plaintiff had not

FINDINGS AND RECOMMENDATION - 10

been compliant with medical treatment but instead had continued to use marijuana and had not consistently taken prescribed anti-seizure medication.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

FINDINGS AND RECOMMENDATION - 11

Plaintiff contends that the ALJ erred in failing to give him prehearing notice that noncompliance with prescribed treatment would be an issue at the hearing, failed to properly evaluate his seizure disorder, erred in determining that his drug use was "material" to the determination that he was disabled, and improperly rejected the opinion of Dr. Wong-Ngan, an examining doctor.

1. **Notice of Noncompliance Issue**

At the beginning of the hearing, the ALJ told Plaintiff's counsel that noncompliance with prescribed medical treatment was an issue that would be considered at the hearing. Plaintiff's counsel objected on the grounds that he had not been informed earlier that this would be an issue. The ALJ overruled that objection, proceeded with the hearing, and found in her decision that Plaintiff had not been compliant with medical treatment; he had not consistently taken prescribed anti-seizure medication and had continued to use marijuana.

Plaintiff contends that this action should, at the least, be remanded for further development of the noncompliance issue because the ALJ failed to comply with the requirements of SSR 82-59 and HALLEX 1-2-210. SSR 82-59 sets out the circumstances under which a claimant's application for benefits may be denied for failure to follow prescribed treatment. This document states that a claimant should be notified in advance of a hearing that benefits could be denied based on failure to follow prescribed treatment, that a claimant should be given the opportunity to explain why he did not follow the treatment prescribed, and that the claimant's treating physician should be contacted to clarify the treatment that the claimant was told to follow. Part 1-2-210 of an Agency internal policy manual (HALLEX 1-2-210) states that an ALJ or the hearing office staff must send the claimant and the claimant's representative notice that noncompliance is an issue at least 20 days before a hearing.

Plaintiff's reliance on SSR 82-59 is misplaced. As the Commissioner correctly notes, the requirements of SSR 82-59 apply only if the ALJ denies an application for benefits "solely on [the claimant's] failure to follow prescribed treatment . . . ." Robert's v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995). Here, though the ALJ observed that Plaintiff did not comply with prescribed treatment, she clearly denied the application for SSI benefits primarily because she found that Plaintiff's abuse of marijuana was a factor material to the finding that he was disabled. The ALJ cited and relied upon substantial evidence in the medical record supporting her conclusion that Plaintiff could not work full time because of his substance abuse. Accordingly, there is no doubt that the ALJ would have found Plaintiff to be disabled because of his substance abuse whether or not he consistently took the anti-seizure medications that his treating neurologist prescribed.

Plaintiff's reliance on HALLEX 1-2-219 also fails. HALLEX does not impose judicially enforceable duties on the Agency. Lockwood v. Commissioner, 618 F.3d 1068, 1072 (9th Cir. 2010).

2. **Evaluation of Plaintiff's Seizure Disorder**

As noted above, in the third step of the disability analysis, an ALJ must determine whether, alone or in combination, a claimant's impairments meet or equal one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Here, at the third step, the ALJ found that, if Plaintiff stopped his substance abuse, he would not have an impairment or combination of impairments that met or equaled an impairment in the listings. She noted that she had considered listing 11.02, the listing for convulsive (grand mal) epilepsy and 11.03, the listing for non-convulsive (petit mal) epilepsy, and found "that claimant's seizure disorder does not meet the criteria for either listing."

FINDINGS AND RECOMMENDATION - 13

Plaintiff contends that this action must be remanded for further clarification because the ALJ's evaluation of his seizure disorder at step three did not provide the level of detail required by Listing 11.00A or SSR 87-6. He asserts that the ALJ's "cursory" analysis "also fails the standard set forth in Marcia v. Sullivan, 900 F.2d 172 (9th Cir. 1990)."

I disagree. Listing 11:00A provides that the "degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures." However, this section does not state that an ALJ must set out the analysis of these factors in particular detail.

SSR 87-6 states that only a small number of persons who have epileptic seizures are precluded from engaging in substantial gainful activity, and notes that poor control of seizures is most often caused by noncompliance with prescribed treatment. This Ruling states that a claimant's treatment regimen, response to treatment, anticonvulsant blood levels, and frequency of seizures must be considered, and that certain evidentiary requirements must be satisfied in order to satisfy the criteria of Listings 11:02 or 11:03. However, the Ruling does not state that an ALJ must set out the analysis of relevant factors with any particular specificity.

In Marcia, 900 F.2d at 176, the court observed that "in determining whether a claimant equals a listing under step three of the . . . disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Id. at 176. However, in that action the claimant had "presented evidence in an effort to establish equivalence," including an alternative test to establish the existence of a finding that was required to meet the relevant listing. Id.

Where, as here, a claimant has not presented a plausible theory of how an impairment meets or equals a listing or cited specific evidence that a Listing is satisfied and the ALJ has supported her conclusions with a thorough evaluation of the evidence, extensive discussion of

FINDINGS AND RECOMMENDATION - 14

the listings is not required.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001);  Gonzalez v. Sullivan, 911 F.2d 1197, 1200-01 (9th Cir. 1990) (where ALJ's thorough evaluation of evidence adequately supported  conclusions, ALJ not required to provide extensive analysis of listings ).

3. **Rejection of Opinion of Dr. Wong-Ngan**

As noted above, Dr. Julia Wong-Ngan, an examining neuropsychologist, found that Plaintiff demonstrated average intelligence, generally performed in the normal range on cognitive tests, appeared to have mild problems with distractibility and demonstrated mild impulse control problems.  She opined that "probably a few factors," including Plaintiff's seizure disorder, interfered with Plaintiff's ability to sustain employment.  She opined that Plaintiff had problems with authority and anger control, likely had an anti-social disorder, appeared  to have significant anxiety and depression, and appeared to have "some degree" of panic disorder and agoraphobia.  Dr. Wong-Ngan opined that Plaintiff had memory problems that were consistent with his seizures and use of Dilantin, and thought that medication for Plaintiff's untreated ADHD might improve his "prognosis for employment."

The ALJ stated that Dr. Wong-Ngan had opined that Plaintiff was "probably disabled by seizures and that his GAF was 53."   She characterized Dr. Wong-Ngan's opinion as "vague," noted that a GAF score of 53 did not necessarily indicate a "total inability to work," and rejected the conclusion that Plaintiff was "probably disabled."  The ALJ stated that, as a psychologist, and not a neurologist or medical doctor, the question of "disability in relation to seizures" was not within Dr. Wong-Ngan's "area of expertise."    She also observed that, though Dr. Wong-Ngan had noted Plaintiff's abuse of marijuana, she had not appeared to take it into account.  The ALJ found that Drs. Doggett and Hill had greater expertise regarding seizures, and that their opinions supported the ALJ's conclusions as to Plaintiff's functional capacity.  She concluded

that Dr. Wong-Ngan had based her opinion as to the severity of Plaintiff's seizure disorder on Plaintiff's own subjective reports.

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Wong-Ngan, an examining neuropsychologist. He also contends that, because she found Dr. Wong-Ngan's opinion "vague," the ALJ, had an "affirmative duty" to "recontact her to clarify any ambiguities" concerning her opinion.

These arguments are not well taken. As the Commissioner correctly notes, an ALJ is required to further develop the record only if the existing evidence in insufficient to permit a proper examination of the record and a reasoned decision. See Tonapetyn v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. § 416.912(e). The ALJ did not find that the existing evidence was inadequate to allow for a reasoned analysis of the relevant issues, and cited substantial evidence supporting her evaluation of Plaintiff's functional capacity and her denial of his application for benefits. Under these circumstances, she was not required to re-contact Dr. Wong-Ngan for further clarification.

Plaintiff's contention that the ALJ erred in rejecting Dr. Wong-Ngan's opinion also fails. An ALJ must explain the weight given to an examining doctor's opinion, 20 C.F.R. § 416.927 (f)(1), and must support the rejection of an examining doctor's opinion that is contradicted by another physician with specific, legitimate reasons which are supported by substantial evidence in the record,. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ here fully explained the weight that she gave to Dr. Wong-Ngan's opinion and provided adequate reasons for its rejection. The ALJ interpreted Dr. Wong-Ngan's assertion that Plaintiff's seizure disorder probably <u>interfered</u> with Plaintiff's employment as a conclusion that Plaintiff's seizure disorder <u>precluded</u> Plaintiff's employment. Assuming that this interpretation

FINDINGS AND RECOMMENDATION - 16

accurately reflected Dr. Wong-Ngan's opinion, the opinion was contradicted by the opinions of other physicians, and the ALJ provided adequate reasons for its rejection.

The ALJ provided specific, legitimate reasons for rejecting the conclusion that Plaintiff's seizure disorder precluded Plaintiff's employment. The most significant of these was the contradictory opinions of treating physicians whom the ALJ reasonably concluded had more expertise concerning seizures, and whose opinions supported the ALJ's evaluation of Plaintiff's functional capacity. The ALJ's observation that a GAF of 53 does not necessarily indicate an inability to work was also a specific and legitimate basis for rejecting the conclusion that Plaintiff could not work. Moreover, the ALJ's observation that Dr. Wong-Ngan did not appear to account for the effect of Plaintiff's drug use on his functional limitations is supported by a careful reading of Dr. Wong-Ngan's report, and supported the conclusion that this examining source erred in her evaluation of the cause of Plaintiff's functional limitations.

The ALJ's assumption that Dr. Wong-Ngan based her evaluation of the functional effects of Plaintiff's seizure disorder on Plaintiff's subjective description appears to be correct, given the absence of any reference to other medical records in Dr. Wong-Ngan's report. The ALJ found that Plaintiff's description of the severity of his symptoms and impairments was not wholly credible, and Plaintiff has not challenged that finding. Under these circumstances, the ALJ could properly discount a medical opinion that was based on Plaintiff's own subjective statements. E.g., Tommassetti v. Astrue, 1035, 1041 (9th Cir. 2008) (ALJ may discount medical opinion that is based on testimony of claimant found not credible).

4. **Finding That Drug Abuse Was Material To Plaintiff's Disability**

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if drug addiction or alcoholism would . . . be a contributing factor material to the

FINDINGS AND RECOMMENDATION - 17

Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). If the ALJ finds a claimant disabled at Step 3 or Step 5 and the record includes evidence of drug or alcohol addiction, the ALJ must determine whether the claimant's addiction is a contributing factor that is "material" to the finding of disability. 20 C.F.R. § 416.935; Para v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007).

In determining whether substance abuse is a contributing factor that is material to the determination of disability, the "key factor" is whether the claimant would still be found to be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). The issue is not whether the claimant used drugs or alcohol during a period of alleged disability, but whether, absent the use of such substances, the claimant meets the disability criteria. Para 481 F.3d at 747-48. Where, as here, substance abuse is an issue, the claimant bears the burden of establishing that his drug or alcohol use was not material to his disability. Id. at 748.

As noted above, the ALJ found that Plaintiff was disabled because he could not work full-time, but that he would not be disabled if he stopped using marijuana. Plaintiff contends that the ALJ erred in reaching this conclusion because the record shows that marijuana use improved Plaintiff's condition, and there is no evidence that Plaintiff's mental and physical impairments would improve if he stopped using marijuana.

This argument fails. Plaintiff's assertion that marijuana lessens his impairment and permits him to interact more positively is undercut by the ALJ's unchallenged finding that Plaintiff is not wholly credible. The ALJ cited the medical record in support of her conclusion that Plaintiff would not be disabled if he discontinued his drug abuse. That record establishes that Plaintiff has a long history of substantial drug abuse, and often spends significant portions of every day under the influence of marijuana. The record includes substantial evidence

FINDINGS AND RECOMMENDATION - 18

supporting the conclusion that Plaintiff's use of marijuana interferes with his ability to control his seizures, exacerbates other impairments, and decreases his ability to work full-time. Treating physicians have opined that Plaintiff's anxiety may be related to his drug abuse, and have repeatedly advised Plaintiff to discontinue his use of marijuana. Dr. Wilcox, an examining doctor, opined that Plaintiff would not be able to work successfully as long as he was using marijuana.

As noted above, when substance abuse is an issue, the claimant bears the burden of establishing that it is not material to his disability. Substance abuse is an issue in this case. Plaintiff has not shown that the ALJ erred in concluding that he had not met that burden.

## Conclusion

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 1, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 19

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of September, 2012.

      /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge